IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION
Civil Action No.:

| | | |
|---|---|---|
| ROBERT BALDOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SAVANNAH RIVER MISSION | ) | |
| COMPLETION LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.     INTRODUCTION

1. Savannah River Mission Completion, LLC (the "Company" or Defendant) refused to hire Plaintiff Robert Baldowski's ("Mr. Baldowski" or "Plaintiff") when it learned he had a disability and requested a reasonable accommodation. The Company refused to discuss what accommodations Mr. Baldowski would and would not need. It would not engage in the interactive process. Mr. Baldowski's disability is dyslexia. The accommodation Mr. Baldowski requested was text to speech software and a reading pen that does not record information.

2. The Company violated the law when it refused to hire Mr. Baldowski. He now turns to this Court to be made whole for his harms and losses. Accordingly, Mr. Baldowski brings suit against the Company for violations of the Americans with Disabilities Act ("ADA").

## II.     PARTIES, JURISDICTION, AND VENUE

3. Plaintiff resides in Columbia County, Georgia.

4. Defendant Savannah River Mission Completion, LLC's principal office is located at Savannah River Site Building 766-H, Aiken, SC 29808. Defendant has a significant presence in South Carolina.

5. Defendant's registered agent is CT Corporation System, located at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

6. If not for Defendant's illegal actions, Plaintiff would have worked for Defendant at the Savannah River Site in Aiken County, South Carolina.

7. A substantial portion of the acts or omissions giving rise to this lawsuit took place in Aiken County, South Carolina.

8. Venue is proper in the United States District Court for the District of South Carolina, Aiken Division because: (a) Defendant's unlawful employment practices were committed in Aiken County, South Carolina; (b) Plaintiff would have worked in Aiken County, South Carolina but for Defendants' unlawful employment practices; (c) Defendant resides in Aiken County, South Carolina because they are subject to the Court's personal jurisdiction there in light of the business it transacts in Aiken County and elsewhere in South Carolina; and (d) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Aiken County, South Carolina.

### III.    FACTUAL STATEMENT

9. Plaintiff Robert Baldowski has a long history of successful employment as a Millwright.

10. Mr. Baldowski is qualified person with a disability. The disability at issue here is dyslexia.

2

11. At the time of this filing, Mr. Baldowski is working as a Union Millwright Foreman. Outside of Defendant's decision at issue in this case, Mr. Baldowski's disability has never prevented him from doing a good job.

12. Mr. Baldowski can not only do the essential functions of that role; he excels in the role and has earned the respect of his peers in the industry.

13. In or around March 2023, Mr. Baldowski was referred to Defendant as a Millwright Craft employee at Defendant's facility at the Savannah River Site in Aiken, South Carolina.

14. This was a vacant position that Defendant requested Mr. Baldowski's union, Millwright Local 1263 (the "Union"), help fill.

15. The specific Millwright position that Mr. Baldowski was going to fill was in rigging.

16. The Union previously submitted Mr. Baldowski for a role at Defendant in 2020. Defendant did not hire Mr. Baldowski at the time. Mr. Baldowski did not know why, but in 2020 Defendant had Mr. Baldowski's disability and accommodation on file. In 2023, at the time of the facts leading to this lawsuit, Mr. Baldowski was internally noted at Defendant as "Restricted."

17. That accommodation was for the use of text to speech software and a reading pen that would not record information.

18. The 2020 role would have included work around radioactive materials. In general, the rigging 2023 role would not have involved this type of radioactive materials area work. Mr. Baldowski has, and had at the time, a rigging certification from the Union.

19. Defendant expressly refused to hire Mr. Baldowski because of his disability and request for a reasonable accommodation.

20. Specifically, on or around March 21, 2023, Mr. Baldowksi went to Defendant to complete his drug screen and paperwork. At that time, Mr. Baldowski was hired; he just had to do paperwork and a drug screen to make it official.

21. But things quickly took a turn. Mr. Baldowski handed his accommodation paperwork to Defendant when he arrived. Someone at Defendant took the document, went back and discussed it, and returned to Mr. Baldowski. Defendant then told Mr. Baldowski it wasn't hiring him because of his dyslexia and adaptive reading technology request.

22. Mr. Baldowski responded that he only needed the accommodation for large documents and training materials. But Defendant didn't care and reiterated that it wouldn't hire him because of his disability and accommodation request.

23. The Union then contacted Defendant's employee, Employee Relations Manager Jim Goodall, on or around the same day and communicated that Mr. Baldowski only needed his reading aid to process large print documents. The Union made clear that Mr. Baldowski's disability did not affect his ability to read warning signs or measuring devices.

24. As background, Defendant's claim seems to be that it could not hire Mr. Baldowski because he would not be able to use his reading aid at the facility.  This is misleading.

25. Mr. Baldowski did not require any accommodation in order to do his job in radioactive areas. There, he could read the warning signs and use measuring devices just as well as non-disabled employees. Bringing manuals and training materials into the radioactive area was not an essential function of the job. There were non-radioactive areas at the facility where Mr. Baldowski could use his accommodation to read such materials. Should questions arise in

4

the radioactive area, Mr. Baldowski would have the ability to communicate by radio and otherwise.

26. Mr. Baldowski would need the reading aid for computerized job training and work packages.

27. For the former, this generally refers to computer trainings and this category of reading has nothing to do with radioactive areas. No one would be doing this sort of reading in a radioactive area.

28. For the latter—work packages—this reading should not happen in a radioactive area. A work package tends to explain how to use the various machines and includes blueprints, permits, safety hazards, and other similar information. The packages can be lengthy, and Mr. Baldowski could use a reading aid to read these materials like any other employee in a non-radioactive area at the facility.

29. Nonetheless, Defendant would not meaningfully engage with Plaintiff's hiring. At first, it seemed like there was some hope for a reversal. Goodall responded that Defendant could proceed with hiring Mr. Baldowski if Site Superintendent Keith Taylor signed off in it.

30. Logan W. Brown at the Union contacted Mr. Taylor on or around March 21, 2023. Mr. Brown communicated that Mr. Baldowski is a certified Millwright who had repeatedly proven himself, including on multiple jobs with nuclear outages. Mr. Taylor responded he would speak to all parties and be in touch.

31. On or around March 21, 2023, Mr. Brown emailed Defendant, requesting that it allow Mr. Baldowski be given the opportunity to show he could perform the essential functions of the job.

5

32. A couple days later, on or around March 23, 2023, Mr. Brown contacted Defendant's Labor Relations Manager Robert Moody and requested a conversation on Mr. Baldowski's employment with Defendant. Mr. Brown asked that Mr. Baldowski be given the chance to come in and show that he could read warning posters and measurement devices without the use of his reading aid. Mr. Moody asked for a couple days to ask other employees of Defendant about it.

33. On or around March 28, 2023, Mr. Moody emailed, stating the Defendant would not allow such an evaluation of Mr. Baldowski. Defendant's position was that the restrictions on file meant it wouldn't hire Mr. Baldowski. Defendant would not engage further.

34. Defendant had tests and evaluations, including a signage test, it could have administered for Mr. Baldowski, but it elected not to.

35. Defendant intentionally discriminated and retaliated against Mr. Baldowski. Defendant refused to hire Mr. Baldowski because of his disability and request for accommodation.

36. Moreover, regardless of intent, Defendant's refusal to engage in the interactive process, including but not limited to administering existing workplace signage tests, has a harmful impact on individuals with disabilities and those requiring reasonable accommodations, like Mr. Baldowski.

37. What's more, Defendant's refusal to engage in the interactive process, including but not limited to administering existing workplace signage tests, is a pattern or practice that negatively affects individuals with disabilities and those requiring reasonable accommodations, like Mr. Baldowski.

6

38. Mr. Baldowski filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 21, 2023.

39. The EEOC found there was reasonable cause to conclude that Defendant had violated the ADA. On May 7, 2026, the EEOC issued a Notice of Right to Sue upon its determination that Defendant would not participate in the conciliation process. Plaintiff files this lawsuit within 90 days of May 7, 2026.

## IV.     LEGAL CLAIMS

### <u>Count I</u>
*(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)*

40. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

41. Plaintiff was disabled in that he is an individual with dyslexia, which impacts his ability to read, write, and spell, which is critical to everyday life, including his job.

42. Dyslexia affects the body's sensory and visual systems, which are a part of the nervous system.

43. Plaintiff had a record or history of a substantially limiting impairment at the time Defendant refused to hire him.

44. Defendant otherwise regarded Plaintiff as having a disability.

45. Plaintiff requested reasonable accommodations (text to speech software—reading; speech to text software—spelling, and a reading pen that does not record information).

46. Plaintiff suffered an adverse employment action when Defendant refused to hire him on the basis of his real or perceived disability.

47. Plaintiff suffered an adverse employment action when Defendant refused to hire him in retaliation for requesting a reasonable accommodation.

48. Defendant further violated the ADA when it failed to engage in the interactive process or to accommodate Plaintiff.

49. Defendant further violated the ADA when it did not grant Plaintiff a reasonable accommodation.

50. Defendant further violated the ADA by not hiring Plaintiff as part of a pattern or practice that had a discriminated against individuals with disabilities and needs for accommodations like Plaintiff.

51. Defendant further violated the ADA by not hiring Plaintiff because of its policy, pattern, or practice that had a disparate impact on individuals with disabilities and needs for accommodations like Plaintiff.

52. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

53. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

8

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendants and order Defendants to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages;

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.


This the 4th day of August, 2026.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
South Carolina Bar No. 100940
Herrmann & Murphy, PLLC
220 North Main Street
Suite 500
Greenville, South Carolina 29601
Phone: 864-516-7526
Fax: 704-940-6407
Email: sean@herrmannmurphy.com

*Attorney for Plaintiff*

9